Case number 22-3052. United States of America v. Terrell Armstead, also known as Rao, also known as Supreme 16. Mr. Zucker for the imbalance, Mr. Hobel for the appellee. Good morning, Jonathan Zucker and Patti Doss on behalf of the Court. There's two issues before the Court on this brief, and they both relate to jury issues. The first is the dismissal of one juror, and I suggest Brown has a controlling precedent here. The juror expressed concern and during that, well, requested to be dismissed from the deliberations. And her reason was that she was uncomfortable with, as she put it, my answer and I'm uncomfortable with the backlash or the backfall of it. It was pretty clear in this context, her answer was synonymous with verdict. The Court intuitively or implicitly acknowledged that there was a severe possibility or significant possibility that she may have been the holdout. And because her decision to be excused from the juror and the judge's decision to dismiss her could not rule out the possibility that it was based on the evidence and based on her verdict, under Brown, it was error. Doesn't Brown stand for the proposition that the Court can't excuse a juror based on her request that stems from her view of the evidence? But in this case, she was excused because of a lack of candor during voir dire, which is separate and apart from her views of the evidence, is it not? If that was the sole basis, did the Court have discretion to dismiss her based on a lack of candor during voir dire? Yes, the Court would have had that. But the problem in this case is there's the significant possibility that her request was based on her different view of the evidence from the rest of the jurors. And under Brown, given the fact that it has to be transparent, the Brown Court found that if it is the possibility that it has to do with her view of the evidence, then that should not be permitted. But should we focus on the District Court's reasons for excusing her, not what her request focused on? Well, and that's fine, but the District Court was not clear. The District Court said, I can't look into her mind and tell whether or not she was intentionally deceptive during the voir dire. And the District Court also found he could not say with certainty that it wasn't because she had a different view of the evidence. As the District Court conceded, it could be that she's a holdout and that her, you know, did her experience with her father possibly affect her evaluation of the evidence? Well, that's possible, but that's not a basis. If it had been a transparent thing, if the Court had made a finding that the sole basis for her coming forward is her failure to disclose previously the conviction of her father on a related offense some nearly 50 years earlier, then yes, I would agree with you. But it's that it was intermixed with her view of the evidence that made it impermissible. And she, I mean, I'm repeating myself. Go ahead. Go ahead. But I mean, but the misconduct has nothing to do with the juror's view of the evidence. Well, the basis for the exclusion was lack of candor with the Court, which, I mean, on this record sounds like a charitable characterization. I would tend to say it's not that clear on this court and the court did remember that her father was convicted of prostitution when she was six or seven, a father who died when she was 10. How much I mean, I'm assuming that once he was convicted, she had no contact was incarcerated. So how much contact do they have and how much how present was it in her state of mind when she was answering for their questions? Actually, the vote here, I was the one who asked her about, you know, not knowing anyone on being convicted of a crime. And so it was an innocent misrecollection. It was an intentional falsehood. That's the judge even acknowledged he couldn't make that call definitively. He said, I can't look into her mind and make that call. If you can't make that call, that's an intentional falsehood. Is lack of candor. All right. So if we spot you the difference between intentional misleading and just lack of candor, I take those points. But it's lack of candor and independent. Ground adequate to support excluding. Well, I think in that instance, the court has to do a test to say, was it intentional or not? And how did it affect it? Does it prejudice the proceedings at all? So if the sake of argument is lack of candor, but it wasn't intentional, it just. Not come to the forefront of her mind because it was something that happened 50 years ago when she was six. I would say that in and of itself wouldn't be a basis. But overlaying everything in this case is the possibility that it had to do with her view of the evidence that she was coming forward because of her view of the evidence. And that was the reason this decision violated Brown. Now, I think that just goes back to the first question, which is why should we be focusing on why she came forward as opposed to why the district court discharge her? And if we think it's incredibly clear that the district court discharged this juror because of misconduct and voir dire, I think our cases say it's entirely irrelevant whether he also knew she had doubts about the government's evidence. Isn't that right? I would disagree because if at the time it comes to the forefront, there is the possibility that she has a different view of the evidence. And as the trial judge correctly intuited, she was the holdout. And so because her decision to seek removal was colored by that possibility and the judge looking at the case was bound to say no, if it's based on the possibility that it's her view of the evidence, then that's not a basis to dismiss a juror. I mean, the case was pretty clear on that. It has to be transparent. Suppose a juror in the middle of deliberations posts on social media a screed about how outrageous the prosecution is. Very clear misconduct, very clear indication of the jurors' views. District court couldn't dismiss that juror based on the misconduct? I think they probably have to because they violated the oath they took to not communicate on social media, and they'd already formulated an opinion before the close of the evidence. But that's not the situation we have here. So with a little due respect, I'm not sure how it's— Why isn't it? If the dismissal rests on the lack of candor, as opposed to whatever the court might have known about the jurors' possible views, it's exactly the same. Well, it's the same in that the juror is making a declaration about their views. But in this instance, I mean, that's such a blatant violation of the rule about not communicating with somebody outside of the jury, that I think that would be the basis for their dismissal. I mean, I frankly have to think of it in terms of, well, is that painted because the dismissal is in part— It's not because of the posting on social media. It's not because of their view of the evidence in what you said. It's much more transparent. It's much more transparent. Where in this case, coming forward was, as the court acknowledged, possibly— And then the dismissal was sought possibly based on her different view of the evidence and her being a holdout. Do you want to move on to questions? Sure. Unless my colleagues have other questions. Sure. Question two is the rule says what the rule says. When you have a deliberating jury and you have a juror who can no longer continue, you have three options. Mistrial, go with 11, or bring back an alternate. In this case, the jury was already down to 11, so you couldn't do that. And you couldn't bring back an alternate because the court had already found, when the first juror was excused, that bringing back an alternate was unrealistic because of the amount of times they'd gone through deliberations. And so the only option left to the court under Rule 23 was to declare a mistrial. It was not to say to the juror, well, we're at the point where we're going to have to dismiss you because of COVID anyway. Would you like to render a partial verdict? I mean, the invitation interfered with and infected the juror's ability to deliberate. This was not a situation where the jurors had indicated at all, at any time, that there was a deadlock or an impasse and something which would have warranted an invitation to or a re-instruction that you could render a partial verdict. Isn't this, though, analogous to a situation where there is a deadlock and the court takes a partial verdict? Because the alternative in both cases is a mistrial. And a mistrial is something that we've said in our case law we should avoid if we can. It's very costly to the system and to the parties to declare a mistrial. And so here, the option was to declare the mistrial or first ask. And I think the judge was very careful not to be coercive about this, but to ask whether you've reached a verdict. And if you have, let us know what it is. It seems to me very much on force with a deadlock situation because what we're trying to avoid is a mistrial. Clearly, the judge was trying to avoid a mistrial that was going to have to be declared because of extenuating circumstances related to COVID. And I would agree he did everything he could to be uncoercive in his instruction. However, the case law is pretty clear. Unless the jury indicates that they're deadlocked or at an impasse, inviting them to to render a partial verdict is tantamount to. I don't know if the case law is clear because this is a sort of unprecedented set of facts. And so normally a court is faced with a deadlock and you can just declare the mistrial or ask for the partial verdict. Here, the district court was forced to declare a mistrial. But before doing so. He just asked for the partial verdict. I just think that's very analogous to a deadlock situation. Well, it's analogous, except it doesn't have the deadlock, which is what warrants the giving of the partial verdict in this case trial. The mistrial, I think, is the thing that is the mistrial is the thing that is so costly to the system because then you have to have another trial. There were four and a half days of deliberation. Right. And it was a trial. It's it's a big cost to the system. So before we go down that road, if it's not coercive, why is it erroneous or an abusive discretion to ask the jury in a non-coercive way? If they've reached a verdict on on one of these counts, there were multiple counts. I'm not saying it wasn't a reasonable decision on the on the court's part. What I'm saying is that the case law talks about it's been it's error for the court to invite a partial verdict absent declaration of. And and here this jury had never indicated that they were dead. That stands for that proposition that there must be a deadlock. I think it's probably Lavelle or my recollection of my head. Lavelle or more with a two on that point. Thank you. All right. I mean, what source of law are you invoking? I'm sorry. What source of law are we talking about? The Sixth Amendment? Are we talking about criminal rule 31 or just talking about this court's supervisory power over tribunals inferior to us? I think it's rule 23 is is the is the sets out what the court has to do. No, 23 is the one that talks about, you know, when a jury. The three options open to a court when the when the when they're in a situation like this, they can't. What triggers it? Well, they don't no longer have a full jury. And rule 23, your briefs argue this should be subject to the constitutional armless standard. And I clearly argue it's a Sixth Amendment. Right. And that's how it's. Portrayed by cases like Lavelle and others that you rely on the second issue. Correct. Right. Well, the source of law for your second issue. I think what you're trying to get at is the harmless error issue. And I think in this context, the defendant was denied the right to have the jury fully deliberate and come to a verdict on its own. And that's what comes forward in the villain more that you can't infringe upon the juries. I mean, here's here's how I'm thinking of it. If we're talking about the Sixth Amendment, there's very spare text. And we would have to look at history the way Ramos did right. Jury verdict means unanimous verdict. You know that from hundreds of years of practice. Maybe there's some analogous principle that jury verdict means a verdict structured. However, the jury wants to structure it. But I don't see that. Well, it seems to me we're just we're just talking about the our courts supervisory authority. Judge made law to make sure that trials don't run off the rails. And if that's what we're talking about, I would think we give the district court a fair amount of leeway to deal with. Weird circumstances as they come up like an emerging pandemic. Undoubtedly, that was a significant factor in the judge's decision making that everything was being shut down. And I suspect throughout this country on the day the courts were shut down because of days, the courts were shut down because of the endemic. There were probably lots of trials that were going on and probably I would assume lots of juries that had not reached finality in the verdicts. And in that situation. A mistrial should have been declared. So the district court has this hugely exigent circumstance. Deals with it as best he can. I agree with Judge Pan. The instruction was not coercive. So what's the harm to your client? The harm was that the jury was not allowed to complete their job and that they were they were invited to. It was an invitation to render a verdict when the jury had not indicated that they had completed their deliberations. And the fact that they had preliminary indicated they may have reached a verdict on one count, but then chose not to give it that day. The court does not have the option to say to the jury, we're about to we're about to declare a miss an abatement of the proceedings. I wouldn't have used the word mistrial. Can you render a verdict? And in essence, that's what occurred here. Now, I agree that Judge Mehta did everything he could to be as uncoercive as possible. But it is giving of, as other case law have said, when the judge invites a partial verdict, absent a indication from the jury that they are at an impasse, it's improper and it's error. It's concerning if there's reason to think that the jury is either tricked or feels coerced into handing in something as final that they that the jury thinks is tentative. That didn't happen here. Well, we don't know whether or not it happened here. And as the jury told the court, we have a verdict on one count. They did, but then they chose and he gave the they did not render that verdict. They were continuing to deliberate. And the case law makes clear that the jurors may have a tentative view on one issue. And that view may change is up to the jury to control their deliberations as they see fit. And in this case, that was infringed upon. Now, there were other sympathetic circumstances. Yeah, of course. I think when Judge Mehta asked the jury if the jury or foreperson, I guess, whether they had reached a unanimous verdict, there was no objection by you. And I actually wasn't there, but I agree. And then there were only 20 minutes left in the day. So the fact that they didn't come back with a verdict does not seem as significant, given that they didn't really have perhaps have time to do so. Well, all of these other events happened that that made things go off the rails. Whether or not they had enough time to do so is a judgment call. But what clearly prompted the giving of the partial verdict was the instruction when they came back that Monday and one of the jurors had to be excused. Who has been told that there is a partial verdict to just not ask for it? Because under the particular facts of this case, with no objection, it was elicited from a member of the jury that there was a partial verdict. And then these extra circumstances happened where the deliberations would have to end due to the pandemic. The district court knew that there was a partial verdict or at least one juror had indicated. So and you're saying that the proper course would be just not to ask them for it and take a mistrial, which is very costly. Under the rule, under Rule 23, that is correct. Yes, that the court should not. Invite a partial verdict absent a declaration from the jury that they are at an impasse or that they wish to break a partial verdict. I mean, at the point this was all happening, one juror wasn't even participating by Zoom or something. You know, they weren't even all present. Well, they weren't deliberating. They were just supposed to elect another four person and then fill out the sheet. Well. But they had not declared their deliberations at an end. They were still deliberating and then they were told by the judge, give us your essentially give us your partial verdict. And with all due respect, the judge made it, who was balancing all the equities he could under the case law. That was error. Thank you. Give you some time on rebuttal. Good morning. Good morning, your honors. May it please the court. Mark O'Dell for the United States. This is a case about discretion, reasonable exercise of discretion. I don't want to take my colleague out of context, but I think I heard him say that with respect to the verdict. I'm not saying it wasn't reasonable on the district court's part. The district did the jury's the court's instruction, allowing the four person juror 13 to complete two limited tasks that morning. Whoever any unanimous verdicts that the court that the jury had was not an abuse of discretion. I think that some of the court's questions to Mr. Zucker eliminated. There isn't some clear legal prohibition that or clear legal precedent that guided the court's decision making on Monday morning. If the impending that Mr. O'Dell, I think that's true in this circuit. But for example, the 10th Circuit's low valley. I'm not sure how to pronounce it. Decision. Do you think there's any distinction from that case? And this one? I think there is. There is certainly some similarity in the sense that the district court in that case even gave it gave a similar instruction that said, if you if you have any unanimous verdicts, you can deliver them. Of course, the 10th Circuit said that was there. Now there's some, I think, we want to be precise about the error. Right. The court says just like the 10th Circuit, 8th Circuit, 7th Circuit, 5th Circuit, by my count, have all said that you can remind the jury of their ability to return a partial verdict. But the line is crossed if you cut off deliberations and require them to deliver any partial verdicts that they have. I think that's the setup in all four of those cases. And I don't think there's a case that has come out the other way on similar facts. Are you aware of one? I did. Yes, I disagree with that, that there's some unanimity here. We cited in our brief the Harriet case from the 6th Circuit and also from the 10th Circuit. The I believe it was the McKinney case, which predated Lavallee. And in both of those cases, the judges said, look, if you have any unanimous verdicts, you should deliver them at this set time. Or you should. I may be I may be. Mistaking the mechanics of this between Lavallee and McKinney in terms of who she has said seal them in envelopes. But in both of those cases, you had district courts. Indicating if you have like the district court did here, if you have any unanimous verdicts. You can deliver them now, should deliver them now. But if you're not unanimous. Bending over backwards, and that's I'm taking that language from the Patterson case, which is the 10th Circuit case that postdates Lavallee. Bending over backwards to make it clear there was an option that it was not that it was not meant to convert a tentative, a tentative verdict into a into a permanent. That's what we have. And even in Lavallee, the court found it was harmless. Even the Chapman standard for it for for harmless error, the court found that the 10th Circuit found almost beyond a reasonable doubt because it was non coercive. And there's no argument here that this was that this was coercive. I think that might be right as to whether it was coercive at the time. But the thing that the 10th Circuit. So McKinney, yes, was 1975. The Lavallee case, I think, is 2006. So and I think the Harriet case is essentially an invited error case. But just put aside sort of counting up the cases with the 10th and 7th Circuits have essentially said is, yes, this is a formal rule. But part of the right to a trial by a jury is to have the jury structure its deliberations, including deciding whether and when to deliver a partial verdict. Now, I think we would have to disagree with those statements to rule for the government in this case. And I'm just the question I had is, why are those why is that articulation of the jury right? Incorrect? Well, there's a few and I hope you'll give me an opportunity to unpack that one. Not that it not that it matters. I believe McKinney was 1987. It's a little more recent, but still some of data. Number two, as to the 7th Circuit case law, I think your honor is referring to peak into more. In both of those cases, you had the judge giving a partial fairly standard partial verdict instruction hours after the jury had begun deliberating. I think in peak, it was like at 3 a.m. on a early morning Saturday. Sure how you're allowed to do that. But apparently they were if. And so in in this circumstance here, you had the jury that was out for four and a half days. That's that's roughly half the time that this trial they were out for a long time. And in terms of the of the the indication, you can't just tell them to give a partial verdict. I think if we parse and we're careful and the district court was very careful in how it gave this instruction. It wasn't said, give me any verdicts now. It said, if you have any should deliver them. If you don't just write no verdict and they came back and they said no verdict, seven out of eight counts, which is highly consistent with what the person said, where the four person said they were on Friday. Can I ask a question about these other cases from other jurisdictions? It seems to me that when a jury is mid deliberations and you force them to give a partial verdict. That is one situation where the verdict could change because the jury is going to continue deliberating. And there could be changes of heart or there could be forced trading or compromises that could cause something that was a preliminary verdict to change. But in this situation, we know that the deliberations are ending. The jury doesn't know it, but the district court knew that was the case. And it seems to me that there wasn't going to be an opportunity for continued deliberations where verdicts could change. And there could be reassessment of a prior verdict made. And I'm wondering if that is a fact that distinguishes this case from some of these cases from other jurisdictions. It is absolutely a fact that distinguishes this case from from other cases. I think it was a material fact in in in those cases. I think more is coming to mind here that the jury continued deliberating and returned somewhat inconsistent verdicts or didn't. I think there was one either more Benedict in which the partial verdict instruction was given. The jury returned a guilty verdict on the 924 C count and then continued deliberating. And it either acquitted or had a mistrial on the underlying predicate. So it seems that there was no room for the jury to structure its deliberations any further in this particular case, which distinguishes it from those other cases. That's entirely correct. That's entirely correct. And it is true. There were additional safeguards in place here. The district court said, you know, I just want to make sure I'm quoting from its record here. It said. Sorry, none of this is none of this is meant to. I'm not asking you to come to a conclusion if you have not. And then he again warned the jury, none of this is meant to urge you or to compel you to reach a verdict as to any particular count. It also didn't say your deliberations are going to continue. It said, come back after you've completed these two tasks and we'll sort of reassess from there. So I didn't squarely say that deliberations were at an end, but it also didn't say that they were going to continue. In just to briefly respond to that, to the rule 23 unavailability point. This is this is not a situation is absolutely not a situation with a clear text of rule 23 proscribes what the district did here. The district never found that the juror was unavailable. It found she could participate remotely in completing the two limited tasks that it assigned to the jury. One, a largely clerical one, picking a new foreperson to completing the verdict form with any verdicts, any unanimous verdicts. They had reached at that point in time and writing no verdict. Next, any counselor, they had not reached a verdict. So this isn't a situation where rule 23 clearly governs, describes this. Therefore, this is an area that's committed to the district court's discretion and reasonably exercised its discretion. Wade, I think that to quote it, the district court, it weighed the things it had to weigh in the balance. That's what we asked district courts to do. It appropriately exercised its discretion here because a mistrial is very costly and really is to be avoided whenever possible. That's that's what the district court did here. Unless there are any further questions on the verdict, I'm happy to turn briefly to juror 10. OK, so there was an independent good cause justification for removing juror 10 based on her jury misconduct, namely her lack of candor during voir dire. That was unconnected to her view of the evidence. She hadn't heard any evidence at the time that she was asked at least five times. And Mr. Zucker is right. He asked her at least three of those times. Incredulously. Really, you haven't you don't know anybody who's been convicted of a crime in your 53 years of living in D.C. I think the district court was somewhat charitable. Judge Katz is in in how it characterized. Juror 10's conduct here, I think there, but certainly at a minimum, it found there was a lack of candor that is sufficient to remove her. It provides a sufficient good cause, just an independent good cause justification. Therefore, there was no abuse of discretion. Just very discretion is very quickly before I sit down to correct the record here. The district court did not find that she was juror 10 was pulled out. It very explicitly found. I'm not saying one way or another. It said and this is I'm just quoting from pages 57 through 58 of the supplemental appendix. The court found I'm not taking from her statements any certainty one way or another as to whether she is a holdout or that she is on board with the government's proof. And it's just simply having a difficult time, given her past with with all of it. So, you know, there's no finding there that the district explicitly can go down that route. The district properly focused on her misconduct or just very briefly, though, isn't the rule. If it were absolutely clear she was the holdout and it was also absolutely clear she lied during voir dire. You would say if the judge says solely because she lied during voir dire, I'm discharging her. But that's OK. Right. Absolutely. I 100 percent agree with that. I'm just in terms of correcting. Unless there are any further questions, we'd ask that you affirm the district. Thank you very much. Soccer will give you two minutes. Regarding Harriet, the distinction in Harriet is that the jury twice, I think, came back with notes saying they were at an impasse and that takes it out of the realm of what happened here. And the only other point is that leaves. When the court made the ruling, it did. It took away the juror's right to reconsider and change their mind prior to rendering a verdict, which is, I would suggest, an intrusion. The third is the judge never made an independent finding really establishing what the basis for striking the juror was, that it was based on the lack of candor versus her inability to deliberate because of her view of the evidence. Had he made that finding, we would be in a different state. He purposely curtailed his inquiry so as not to trade into those areas. And because of that, he never made the findings. That's all I've had in response to any other questions. Thank you, Mr. Zucker. You were appointed by the court to represent the appellant in this case. And we thank you for your able assistance. The case is submitted.
judges: Katsas, Pan, Garcia